**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ABDUL-HAQQ SALAAM, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Petitioner, | : | Civil No. 04-1617 (DMC) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> ABDUL-HAQQ SALAAM, #105367A
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner <u>pro se</u>

> JOAN E. LOVE, Special Deputy Attorney General
> ACTING ESSEX COUNTY PROSECUTOR
> Essex County Courts Building
> Newark, New Jersey  07102
> Attorneys for Respondents

**CAVANAUGH**, District Judge

Abdul-Haqq Salaam filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed as a mixed petition or, alternatively, on the merits.  Petitioner filed a Traverse and was permitted to supplement the record.  For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

# I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on February 18, 1997, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of armed robbery and possession of an imitation firearm for an unlawful purpose.  The Law Division sentenced Petitioner to a term of life imprisonment, with no eligibility for parole, pursuant to New Jersey's Persistent Offender Accountability Act, see N.J. Stat. Ann. § 2C:43-7.1.  Petitioner appealed.  In an opinion filed November 4, 1998, the Appellate Division of the Superior Court of New Jersey affirmed.  State v. Salaam, No. A-6074-96T4 slip op. (App. Div. Nov. 4, 1998).  On February 29, 2000, the Supreme Court of New Jersey denied certification.  State v. Salaam, 163 N.J. 78 (2000) (table).

On December 28, 2000, Petitioner signed a state petition for post conviction relief and presumably handed it to prison officials for mailing to the Law Division.  In an order entered May 10, 2002, the Law Division denied relief.  Petitioner appealed, and in an opinion filed October 29, 2003, the Appellate Division affirmed the order denying post conviction relief.  State v. Salaam, No. A-6511-01T4 slip op. (App. Div. Oct. 29, 2003).  The Supreme Court of New Jersey denied certification on February 27, 2004.  State v. Salaam, 179 N.J. 312 (2004) (table).

Petitioner executed the Petition which is now before the Court on April 1, 2004.  The Clerk received it on April 5, 2004.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner withdrew the original Petition and filed one

2

timely all-inclusive Petition on August 27, 2004.  The Petition presents the following grounds,

which are set forth below verbatim:

> GROUND ONE:  Ineffective Assistance of trial counsel.
> Ineffective Assistance at all levels by all appeal lawyers.  Police
> possessed unreasonable belief and improbable cause to arrest
> petitioner.  At trial jurors slept.
>
> Supporting Facts:  Trial counsel omitted to obtain police 911
> dispatcher's taped telephone call from alleged crime victim that's
> of alleged robber's description on which alleged crime victim
> failed to describe petitioner as her alleged robber.  State withheld
> from trial that taped police 911 dispatcher's transmission
> counsel(s) says "suggests is exculpatory evidence and facts in this
> case that lie outside the trial record."  The trial transcript also
> reveals of this case that the alleged crime victim testified to the
> jury that a police were at the alleged crime scene with a mug-shot
> of this defendant-petitioner and had shown it to the alleged crime
> victim while another police were out on patrol looking for the
> alleged robber of this alleged act.  The trial transcript also reveals
> both state witnesses, the alleged crime victim and the arresting
> female police testifying that this alleged act from the alleged
> robbery itself to the coming upon this petitioner on the street some
> two to three miles from the alleged crime scene by the arresting
> police.  They told the jury this whole act happened within 10 to 20
> minutes.  This defendant-petitioner is not known to be a long
> distant runner or sprinter.  Yet, on the night in question, the state
> witnesses want the court to believe this petitioner, at the time this
> whole act is alleged to have occurred, or after the alleged actual
> robbery, defendant here had ran almost three-miles on feet in the
> course of 10 minutes from the alleged crime scene after said act
> had occurred.  Which is what the trial transcript reveals.  Prior to
> this arrest, petitioner had taken medication for being HIV positive
> and for that disease complications.  Which means at and before this
> arrest, petitioner was not in no physical condition which would
> have allowed this defendant to run nor sprint three-miles within 10
> to 20 minutes nor an hour.  Plus, petitioner here was 46 years old at
> the time of this alleged act.  The trial transcript also reveals several
> jurors slept soundly through a significant portion of this cases' trial
> while testimony was being taken.

GROUND TWO:  Arresting police violated petitioner's constitutional rights.  The prior judgment of conviction (face sheets) used as predicate strikes in this case for the "three-Strikes" law sentencing of petitioner was "defective."

Supporting Facts:  I did not commit this alleged toy-pistol armed robbery for which I am confined.  The police admitted on the witness stand that she "found" not in my possession the evidence of this case.  Prior judgment of conviction face sheets was also a concurrent plea agreement, both 899-74 and 956-74 and was out-dated in range to be legally applied here and they possessed no criminal law coded statute written on them and neither document had on it information under the circumstances the pleas was agreed to.  Petitioner's HIV medical condition was overlooked by sentencing judge whom at sentencing used my almost 30 years of drugs addiction to enhance and that fact was not spelt out in the indictment nor was the jury given that information to consider.  The trial transcripts revealed all the above.

GROUND THREE:  This whole case is based on lies and manufactured evidence by the arresting female police, Det. Rowe, Det. Francis and officer Wright.  The 3 latter were witnesses and involved in this case but the prosecutor released them as my accusers from their court ordered subpoenas prior to trial with the defense being left out of participating in that decision.  The alleged crime victim mistakenly identified me at the alleged crime scene after this unlawful arrest, twenty-four hours after this unlawful arrest at police headquarters she is shown a police mug-shot by Det. Rowe of petitioner confirming her mistaken identification of petitioner and in court on the witness stand the alleged crime victim mistakenly identified me as her alleged robber.  When in fact the same records reveals that alleged crime victim testifying to her never having told the police 911 dispatcher nothing of what her alleged robber looked like even though the trial transcript, two grand [juries] and the police report reveals this alleged crime victim having testified to having stood three-feet in very bright lights in the alleged crime scene face to fact to face with alleged robber for 15 minutes, but there is no records of her telling no law enforcement officer of what this petitioner or her alleged robber looked like during the alleged occurrence of this alleged toy-pistol armed robbery.  The single police mug-shot shown to alleged crime victim prior to this arrest at the alleged crime scene and twenty-four hours after at police headquarters and finally at trial depicts

4

petitioner wearing a huge thick jet black old mustache which is unmistakable and unforgettable.  And when at grand jury and police headquarters she was is asked did she describe[] to police 911 dispatcher what her alleged robber looked like, the alleged crime victim gave her sworn testimony like this.  All I could tell them (police 911 dispatchers) was he was black and he had on a grey skully and about medium height.  The arresting female police testified on the witness stand as to having told the alleged crime victim on the night in question while this defendant-petitioner was sitting at 3 a.m. in the morning handcuffed in the backseat of the arresting police car, that "she had" arrested this defendant-petitioner and that "she found" me wearing a huge black mustache, blue-jeans, tan jacket, a pair of sneaker, I was five-feet-seven in height.  I wore a "grey hat" and "she found" a black toy-pistol with $65.00 in cash and two bavarian cream donuts in a bag but that is not what the alleged crime victim testified to as having told the police 911 dispatcher on the night in question.

GROUND FOUR:  2C:43-7.1 applied in this case unconstitutionally and female arresting police wilfully committed perjury on the stand throughout the trial of this case.

Supporting Facts:  During trial of this case on the witness stand the female arresting police told the defense counsel and the jury her police 911 dispatcher's information of the alleged occurrence of the act on the phone by the alleged crime victim is inculpatory identifiers the arresting female cop testified to as being information she relied upon to unlawfully arrest petitioner.  But the information the alleged crime victim testified to as having of her alleged robbers' description which is also the same information found written in the police report and was given to the police 911 dispatcher on the night in question by the alleged crime victim isn't in no way the same information the female arresting cop testified to as using to make this unlawful arrest.  She said on the stand was information radioed by police 911 dispatcher on the night in question to her police car radio she says she was in at the time of this alleged robbery.  This same contradiction given by the female cop who did the arrest, which is information in direct opposition to that given by the alleged crime victim of robber to the police 911 dispatcher found written on the police report and given to two grand juries is contradictions by the female arresting cop found in her written police report of this case, and is the same perjury found in this case's trial transcript of the arresting cop done while she

5

> was on the stand.  The trial transcript of this case reveals the
> defense counsel saying she is unable to defend petitioner's
> constitutional rights because the trial judge refused to cure the
> police taint of this case and she admitted on the trial record, that
> because the trial judge was blind to the exculpatory evidence of
> this case.  She as the defense counsel could not have this
> defendant-petitioner the adequate legal representation to prove this
> case does not warrant this state's three strikes law to be applied.

(Pet. ¶ 12.A. - 12.D.) [Docket entry #14-1]

The State filed an Answer, arguing that the Petition should be dismissed without prejudice as a mixed petition because several claims were not presented to the New Jersey courts. Alternatively, Respondents seek dismissal of the Petition on the merits pursuant to 28 U.S.C. § 2254(b)(2).

Petitioner filed motions to expand the record and for leave to conduct discovery.  On December 19, 2005, this Court granted Petitioner's motion to expand the record to include a grand jury transcript dated April 25, 1996, the statement of a witness named Ms. Lumpkin given to police on November 23, 1995, and the police report of East Orange Police Officer Kim Johnson, dated November 23, 1995, which were attached to Petitioner's moving papers. However, this Court denied the motion for leave to conduct discovery, finding that Petitioner failed to demonstrate good cause.  See 28 U.S.C. § 2254 Rule 6.

On January 21, 2005, Petitioner filed a Traverse and an Appendix.  The Traverse presents four constitutional grounds, with subparts:

> GROUND ONE:  (1) petitioner was provided with the Ineffective
> Assistance of Counsel in Violation of Amendment VI in That Trial
> Counsel:

(a) Failed to Press and Amdt. VI Claim for Suppression of Evidence Incident to an Arrest in Lieu of a Clear <u>Terry</u> Stop Violation.

(b) Failed to Press an Amdt. Vi and Amdt. XIV Claim When Evidence of Prearrest Silence was Adduced at Trial, and Further Failed to Move for a Mistrial or at Minimum a Curative Instruction in Connection With the Constitutional violation.

(c) Failed to Press an Amdt. VI and Amdt. XIV Claim When Failing Object to Hearsay Testimony, nor Seek a Curative Instruction, When Evidence was Offered in Connection With the Identification of Petitioner.

(d) Failed to Press an Amdt. VI and Amdt. XIV Claim Failing to Move for Juror Disqualifications When on Several Occasions Jurors Were Found to be Sleeping or Dozing off.

(e) Failed to Include Subparagraph's (a) and (d) as an Additional Amdt. XIV Claim for Violations of Amdt. XIV due Process and a Fair Trial as Apart of the Motion for a New Trial.

(f) in Failing to Raise the Generic Claims in Subparagraph's (a)( through (e), as Aforesaid, Would Have Subjected Petitioner's Claims to the Higher Review Standard of Plain Error.

(g) Failed to Retain the Services of a Photo-Identification Expert Once the two out-of-Court Identifications Were Admitted in Violation of Amdt. VI's Right to the Compulsory process of Obtaining Favorable Witnesses.

(2) Petitioner was Provided With the Ineffective Assistance of Appellate Counsel in Violation of Amdt. VI and Amdt. XIV's Equal Protection Clause, When Appellate Counsel:

(a) Failed to Raise Otherwise Generic Claims in Subparagraphs (1)(a) Through (1)(e) on Appeal and Review.

(b) Raise an Amdt. XIV Claim of Cumulative Error in Violation of the Right to Due Process and a Fair Trial.

(c) Raise, Present, and Frame the Issues Described in (2)(b) Herein, Both in Terms of the State and Federal Constitution Which may

7

Ultimately Subject the Petition to Dismissal Absent a Federal
Ruling Finding Fair Presentation, as well as Subjecting the Claims
to the Various State Procedural and Time bars.

(d) Appellate Counsel Failed to Raise Meritorious Issues on
Appeal Such as Those Identified Previously.

GROUND TWO:  Petitioner's Amdts. V and XIV Rights to Due
Process and a Fair Trial Were Violated When the Trial Court
Admitted Impermissibly Suggestive Evidence of two out-of-Court
Show-up and Photo Identifications.

GROUND THREE:  Petitioner's Amdt. XIV rights to Due Process
and a Fair Trial Were Violated When the Trial Court Failed to
Instruct the Jury on Identification.

GROUND FOUR:  The Constitutional Errors, Whether
Individually or Cumulatively, of Counsel and Those With respect
to the Generic Claims, Deprived Petitioner of his Rights to Due
Process and a Fundamentally Fair Trial in Violation of Amdt. XIV.

(Traverse, Constitutional Violations Claimed by Petitioner.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S.

62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d

8

152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension."  <u>Smith v.</u>

<u>Phillips</u>, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, §

2254 is simply inapplicable.  It is unnecessary in such a situation to inquire whether the prisoner

preserved his claim before the state courts."  <u>Engle v. Isaac,</u> 456 U.S. 107, 120 n.19 (1982).

"[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process

Clause."  <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well

established that a state court's misapplication of its own law does not generally raise a

constitutional claim."  <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (citation  omitted); <u>see</u>

<u>also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).

      A district court must give deference to determinations of state courts.  <u>Duncan v. Morton</u>,

256 F.3d 189, 196 (3d Cir.), <u>cert. denied</u>, 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87,

90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and

appellate courts are correct, a presumption that can only be overcome on the basis of clear and

convincing evidence to the contrary."  <u>Stevens v. Delaware Correctional Center</u>, 295 F.3d 361,

368 (3d Cir. 2002).  Where a federal claim was "adjudicated on the merits" [1] in state court

proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  <u>Rompilla</u>, 355 F.3d at 247.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

10

### III.  DISCUSSION

<u>A.  New Claims Presented in Petitioner's Traverse</u>

In Ground One of his Traverse executed January 15, 2005, Petitioner presents seven new claims of ineffective assistance of trial counsel and four claims of ineffective assistance of appellate counsel.  Specifically, he complains that trial counsel failed to seek to suppress evidence incident to his arrest as a violation of <u>Terry</u>; failed to move for a mistrial or curative instruction regarding pre-arrest silence; failed to object to hearsay testimony regarding the identification of Petitioner or seek a curative instruction; failed to move to disqualify sleeping jurors; failed to include the aforesaid claims in a motion for a new trial; and failed to retain a photo-identification expert.  He claims that appellate counsel failed to raise all his ineffective assistance of counsel claims on appeal; failed to raise a cumulative error claim; failed to present his claims as federal claims; and failed to raise meritorious issues on appeal.  In Ground Two, Petitioner elaborates upon his claim that the admission of the impermissibly suggestive evidence of the show-up and photo identification violates due process.  In Ground Three, Petitioner asserts as a new claim that the failure to instruct the jury on identification violates due process.  In Ground Four, Petitioner raises a new claim that the cumulative constitutional errors deprived him of due process and a fair trial.

Petitioner's one all-inclusive Petition, executed on August 22, 2004, also presents four grounds, with subparts.  In Ground One, Petitioner raises ineffective assistance of trial and appellate counsel.  In the supporting facts, Petitioner elaborates on his ineffective assistance claim: "Trial counsel omitted to obtain police 911 dispatcher's taped telephone call from alleged crime victim that's of alleged robber's description on which alleged crime victim failed to

describe petitioner as her alleged robber."  (Pet. Ground One, Supporting Facts.)  However, the Petitioner does not elaborate on his ineffective assistance of appellate counsel claim.

The one-year statute of limitations under 28 U.S.C. § 2244(d)(1) expired November 9, 2004, almost three months before Petitioner executed his Traverse.  Federal Rule of Civil Procedure 15(c)(2) provides that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same "conduct, transaction, or occurrence."  Fed. R. Civ. Pro. 15(c)(2).  In Mayle v. Felix, 125 S.Ct. 2562 (2005), the Supreme Court considered whether a new claim, targeting the petitioner's pretrial statements, filed in an amended § 2254 petition five months after the expiration of the statute of limitations, relates back to the date of his original timely filed petition, which targeted the videotaped witness testimony.  The Court held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Mayle, 125 S.Ct. at 2566; see also United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) ("Certainly the court could have permitted an amendment to clarify a claim initially made").

Under Mayle, this Court will not consider new claims raised for the first time in Petitioner's traverse after the statute of limitations expired, i.e., seven additional instances of defective performance by trial counsel, a challenge to the identification instruction, and a challenge to cumulative errors under due process .  The Court will consider the issues raised in the Traverse only to clarify the claims asserted prior to expiration of the limitations period.

Specifically, this Court will consider Petitioner's elaboration of his ineffective assistance of appellate counsel claim and his suggestive identification claim, as set forth in the Traverse.

B.  Arrest

Petitioner asserts in Ground One that the police officer who arrested him as he walked down the street two to three miles from the crime scene lacked probable cause.  He points to discrepancies between the police officer's testimony at trial regarding the description of the suspect by the 911 dispatcher, the police report, and the testimony of the victim about her description of the suspect to the 911 dispatcher.[2]

The Fourth Amendment, applicable through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S.Const. amend. IV.  Although Petitioner's arrest was a seizure, the police officer who arrested him did not violate his Fourth Amendment rights because, at the time of the warrantless arrest, the police officer had probable cause to make it, i.e., "the facts and circumstances within [her] knowledge and of which [she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed . . . an offense."  United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) (quoting

---

[2] Although Petitioner did not present this ground to the New Jersey courts on direct appeal or in his petition for post conviction relief and the claim is not exhausted, this Court will not dismiss the Petition as a mixed petition because neither this ground, nor any other unexhausted ground, presents a colorable federal claim.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Moreover, even if the police officer lacked probable

cause to arrest Petitioner, his claim fails on habeas review.  "An illegal arrest, without more, has

never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."

United States v. Crews, 445 U.S. 463, 474 (1980); see also Gerstein v. Pugh, 420 U.S. 103, 119

(1975).  Thus, Petitioner's false arrest claim does not raise even a colorable federal habeas claim.

C.  Suggestive Identification

 Petitioner claims that his conviction violates due process because the victim's in-court

identification of Petitioner was based on an impermissibly suggestive out-of-court identification

by the victim.  Specifically, he asserts that the police transported him to the scene of the crime in

a police car and asked the victim if Petitioner was the person who robbed the Duncan Donuts.

Petitioner further asserts that, the next day, at the police station, the police showed the victim one

photograph (of Petitioner), and she identified the person in the photo as the robber.

 The Supreme Court has observed that improper pretrial identification procedures by

police may cause witnesses to misidentify a criminal.  See Simmons v. United States, 390 U.S.

377, 383 (1968).  In that case, "the witness thereafter is apt to retain in his memory the image of

the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of

subsequent lineup or courtroom identification."  Id. at 383-84.  As the Supreme Court noted, "[it]

is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of

irreparable misidentification."  Simmons, 390 U.S. at 384.  "It is the likelihood of

misidentification which violates a defendant's right to due process . . . .  Suggestive

confrontations are disapproved because they increase the likelihood of misidentification."  Neil

v. Biggers, 409 U.S. 188, 198 (1972).

14

On the other hand, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, identifications will not violate due process.  See Coleman v. Alabama, 399 U.S. 1, 7 (1970).  The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Manson v. Brathwaite, 432 U.S. 98, 106 (1977) (quoting Biggers, 409 U.S. at 199); see also Thomas v. Varner, 428 F.3d 491, 503 (3d Cir. 2005).  Factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199.

In this case, Petitioner contends that the in-court identification of Petitioner by the victim was tainted by the impermissibly suggestive out-of-court show-up identification at the scene of the crime and mug shot identification the next day.  The Appellate Division considered and rejected Petitioner's claim that the out-of-court identification procedures tainted the victim's in-court identification:

> While the show up and single photo array of defendant were suggestive within the meaning of State v. Madison, 109 N.J. 223, 232 (1998) (citing Manson v. Brathwaite, 43 U.S. 98 (1977)), the record reveals that the trial judge was clearly correct in concluding that the totality of circumstances provided sufficient indicia of reliability to outweigh the corrupting effect of the suggestive identification procedure.  State v. Santoro, 229 N.J. Super. 501, 504 (App. Div. 1988) (citing State v. Ford, 79 N.J. 136 (1979)).  Further, the judge's instruction on identification, which defendant did not object to, was comprehensive and tailored to this case and a correct expression of relevant law.

State v. Salaam, No. A-6074-96T4 slip op. at 4-5.

The New Jersey court's ruling that the in-court identification was reliable was not contrary to, or an unreasonable application of, the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification. Biggers, 409 U.S. at 199. The victim had a clear opportunity to view the criminal at the time of the crime and the victim was paying attention. Under these circumstances, the Appellate Division's adjudication of Petitioner's tainted identification claim was not contrary to, or an unreasonable application of, Biggers and other Supreme Court jurisprudence.

D.  Sleeping Jurors

Petitioner asserts in the Petition that "several jurors slept soundly through a significant portion of this case's trial while testimony was being taken."  (Pet. Ground One, Supporting Facts.)  Petitioner does not allege in the Petition or Traverse that sleeping jurors violated his Fourteenth Amendment right to due process of law or his Sixth Amendment right to trial "by an impartial jury," U.S. Const. amend. VI, or any other federal right.

This claim was not exhausted before the New Jersey courts.  However, this Court will not dismiss the Petition as a mixed petition because the claim does not present a federal claim.[3] See

---

[3] Habeas Rule 2(c) , see 28 U.S.C. § 2254 Rule 2(c), "provides that the petition must specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground . . . .  Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error."  Mayle v. Felix, 125 S.Ct. 2562, 2570 (2005) (citations and internal quotation marks omitted).  In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be

(continued...)

<u>Engle v. Isaac,</u> 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.  It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts").

E.  Fabricated Testimony and Manufactured Evidence

In Ground Three, Petitioner complains that "[t]his whole case is based on lies and manufactured evidence by the arresting female police, Det. Rowe, Det. Francis and Officer Wright."  (Pet. Ground Three.)   In Ground Four, Petitioner asserts that the female police officer committed perjury because her written report contradicted her testimony.  Petitioner did not exhaust these claims before the New Jersey courts.  However, like the prior claim, these claims do not require dismissal of the Petition as a mixed petition because they do not allege deprivation of a federal right.

F.  Extended Term

In Ground Four, Petitioner challenges the constitutionality of New Jersey's Persistent Offender Accountability Act, <u>see</u> 2C:43-71.  (Pet. Ground Four.)  In Ground Two, Petitioner contends that the "prior judgment of conviction (face sheets) used as predicate strikes in this case

---

[3](...continued)
involuntary under due process criteria"); <u>Baker v. Barbo</u>, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.  See <u>Engle</u>, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); <u>Kontakis v. Beyer</u>, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

for the 'three-strikes' law sentencing of petitioner was 'defective.'" (Pet. Ground Two.)

Petitioner challenged the constitutionality of the Three Strikes Law, facially and as applied, in

the New Jersey courts on direct appeal. The Appellate Division rejected the facial and as applied

claims as follows:

> Save one, the arguments advanced as to the Three Strikes Law have previously been fully explored and rejected in a persuasive opinion by Judge Joseph Riva, in State v. Oliver, 298 N.J. Super. 538 (Law Div. 1996), which we adopt here. See also State v. Van Valen, ___ N.J. Super. ___ (App. Div. 1998) (slip op. at 2). The remaining argument is that the statute as applied to defendant is unconstitutional. Defendant essentially contends that his punishment is cruel and unusual because he committed the robbery with a toy gun. However, it is not true that a robbery committed with a toy gun is less serious than one committed with an actual gun. State v. Butler, 89 N.J. 220 (1982). Indeed, the definition of firearm was amended in 1982 to include toy gun within the definition of a deadly weapon . . . N.J.S.A. 2C:11-1(c)
>
> More importantly, a cruel and unusual analysis of the Three Strikes Law involves consideration not only of the current crime for which defendant was sentenced but also the fact that this crime was committed by a recidivist. See People v. Metters, 61 Cal. App. 4th 1489 (1998). In this case defendant not only committed the two prior robberies necessary to invoke the Act, but other crimes resulting in a total of five prior convictions. Defendant's violent and habitual past contraposes his constitutional claim.

State v. Salaam, No. A-6074-96T4 slip op. at 5-6 (App. Div. Nov. 4, 1998).

This Court emphasizes that eligibility for an extended term under the Persistent Offender

Accountability Act is a question of state law. See Chapman v. United States, 500 U.S. 453, 465

(1991) (under federal law, "the court may impose . . . whatever punishment is authorized by

statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the

penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); see also Wainwright v. Goode, 464 U.S. 78 (1983).

Petitioner is not entitled to habeas relief on a claim that the mandatory term of life imprisonment without parole, imposed under the Persistent Offender Accountability Act for Petitioner's third robbery conviction, violates the Eighth Amendment.  The Supreme Court specifically rejected this argument in Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (because the gross disproportionality principle under the Eighth Amendment "reserves a constitutional violation for only the extraordinary case," in applying this principle for § 2254(d)(1) purposes, Supreme Court held that it was not an unreasonable application of clearly established Eighth Amendment law for the state court to affirm petitioner's sentence of two consecutive terms of 25 years to life for a "third strike" conviction), and Petitioner cites no Supreme Court precedent presenting a contrary view to Lockyer.

Finally, to the extent that Petitioner challenges the first two strikes, his does not warrant habeas relief.  In Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-404 (2001), the Supreme Court rejected such a claim:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. See *Daniels, post,* at 382, 121 S.Ct. 1578. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna County Dist. Attorney v. Coss, 532 U.S. at 403-404.

Based on the foregoing, Petitioner is not entitled to habeas relief on his claims challenging the imposition of an extended sentence.

G.  Ineffective Assistance of Counsel

In Ground One, Petitioner asserts that trial and appellate counsel were constitutionally ineffective.  Specifically, Petitioner asserts that "Trial counsel omitted to obtain police 911 dispatcher's taped telephone call from alleged crime victim that's of alleged robber's description on which alleged crime victim failed to describe petitioner as her alleged robber.  State withheld from trial that taped police 911 dispatcher's transmission counsel(s) says 'suggests is exculpatory evidence and facts in this case that lie outside the trial record.'"  (Pet. Ground One, Supporting Facts.) [4]

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts

---

[4] Petitioner presents several additional instances of allegedly deficient performance by trial and appellate counsel in his Traverse.  However, as previously stated, these new claims will not be considered because they were not raised until after the one-year limitations period expired. See supra at Section III.A.

or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." <u>Id</u>. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  <u>Id</u>.  Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id</u>. at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims on post-conviction review.  The Appellate Division rejected these claims as follows:

> We have reviewed the record in the light of the arguments advanced by the parties and prevailing legal standards.  We are in substantial agreement with the reasons for decision articulated by Judge Merkelback in his oral opinion.  The arguments raised on appeal are without sufficient merit to warrant discussion in a written opinion.

<u>State v. Salaam</u>, Docket No. A-6511-01T4 slip op. at 2 (App. Div. Oct. 29, 2003).

In denying Petitioner's application for post conviction relief, the trial court opined:

> Upon knowing all the relevant facts, the trial attorney made a strategic decision to challenge a suggestive identification procedure under New Jersey law; specifically, a single photo array of the defendant.  Under the facts of this - of the case, suggestiveness alone was not fatal to the identification procedure because the suggestive identification was supported by overwhelming indicia of reliability . . . the success or failure of a trial strategy alone does not determine whether a trial counsel performed adequately.  When an attorney makes an informed strategic decision, as the trial counsel did in this case, they are considered reasonable and virtually unchallengeable by a review in court.
>
> In this case even, if what Mr. McCall alleges - or the petitioner alleges was true, there's absolutely no showing here that further investigation was necessary because of the - again, the overwhelming evidence in th8is case, and the fact that there was a

21

very aggressive attack made on the identification procedure, which the Appellate Division spent considerable time discussing.

In conclusion, the petitioner is barred from questioning the identification procedure used at trial because the Appellate Division made a decision in regards to that process, and deemed it a reliable and proper process.

Furthermore, the petitioner has hailed to demonstrate that the defendant had an unfair trial as a result of a - as a result of a deficient performance of an attorney, or as a result of any of the arguments discussed hereto.  Therefore, the petition for post-conviction relief is denied.

State v. Salaam, Indictment No. 96-5-1511 transcript p. 17, line 2 to p. 18, line 16 (May 10, 2002).

Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim because he has not shown that the adjudication of the claim by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of, Strickland and its progeny.

Petitioner also claims that he received "[i]neffective assistance at all levels by all appeal lawyers."  (Pet. Ground One.)  In the Traverse, Petitioner elaborates on this ground, claiming that appellate counsel failed to raise all claims, failed to present a cumulative error claim, failed to frame the issues as federal issues, and failed to raise meritorious issues.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396.  The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was

22

ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Flores-Ortega at 478.

The alleged failures of appellate counsel in this case are based on counsel's failure to present certain claims.  However, "it is a well established principle that counsel decides which issues to pursue on appeal."  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).

Under these circumstances, Petitioner cannot show that the adjudication of his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, Strickland and its progeny.  See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

H.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a

substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See

Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to

issue a certificate of appealability under 28 U.S.C. § 2253(c).


 S/ Dennis M. Cavanaugh
**DENNIS M. CAVANAUGH, U.S.D.J.**


DATED:        July 21                         , 2006